UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LORI L. RICHARDSON,<br><br>        Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. EDCV 06-00303 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a written decision dated December 20, 2005, Administrative Law Judge Joseph D. Schloss found that plaintiff retained the residual function capacity ("RFC") to perform "simple, repetitive work." [Administrative Record ("AR") 15]. The ALJ found that although plaintiff's RFC precluded her from performing her past relevant work, she retained the RFC to perform alternative work available in significant numbers in the national economy, and therefore she was not disabled. [AR 20-21]. The Appeals Council

1  denied plaintiff's request for review of the ALJ's decision. [AR 4-6].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Vocational expert's testimony**

Plaintiff contends that the ALJ improperly relied on the testimony of the vocational expert ("VE") to find plaintiff not disabled because the VE identified jobs that were inconsistent with plaintiff's RFC as formulated by the ALJ. [See JS 2-4].

The ALJ found that plaintiff retained the RFC for simple, repetitive work. Because plaintiff's RFC was significantly limited exclusively by her non-exertional mental limitations, the ALJ properly recognized that he could not rely on the grids alone to find plaintiff not disabled. [See AR 20]. Rather, he was required to obtain testimony from a VE to support his finding of non-disability. See Reddick v. Chater, 157 F.3d 715, 729 & n.11 (9th Cir. 1998)(explaining that the grids are "based on strength factors only," and that where a claimant's RFC is "signficantly diminished" by a non-exertional impairment, the testimony of a VE is required); e.g., Holohan v. Massanari,246 F.3d 1195, 1208-09 (9th Cir. 2001)(holding that the ALJ "committed clear legal error" where he found that the claimant had solely mental impairments limiting her to simple, repetitive tasks, and yet relied exclusively on the grids to determine that there was alternative

1 work that the claimant could perform).

2 In the circumstances of this case, the VE's testimony does not constitute substantial evidence supporting the ALJ's find that plaintiff can perform the jobs of general office clerk, front desk clerk, or child care provider.

During the hearing, the VE testified that plaintiff's past relevant jobs as an outside sales representative in advertising, an owner-manager of a construction company, and a manager for a transportation company were all skilled work. [AR 271]. The ALJ asked the VE to consider a hypothetical individual who had "no physical limitations of any sort," but whose non-exertional mental limitations allowed her to perform "simple repetitive tasks" with adequate pace and persistence and no other difficulties. [AR 271]. The VE testified that such a person could not perform plaintiff's past relevant work. [AR 271-272].

The ALJ next asked whether there were alternative jobs the hypothetical person could perform. [AR 271]. The VE testified that the ALJ's "limitation for simple repetitive tasks would limit that person to unskilled work[,] and there is a variety of unskilled jobs that could be performed." [AR 272]. The ALJ instructed the VE to identify at least three of those jobs. [AR 272]. The VE, however, did not name any unskilled jobs. Instead, she testified that the hypothetical person could perform semi-skilled "general clerk work, using transferable skills," and two other semi-skilled jobs, that of a front desk clerk and a child-care provider. [AR 272].

In his written decision, the ALJ expressly found that plaintiff "is limited to simple, repetitive tasks. This residual functional capacity is supported by consultative examinations, the medical evidence of record, and the claimant's testimony." [AR 15]. In his analysis of plaintiff's past relevant work, he reiterated that plaintiff "is now limited to simple repetitive tasks," and he noted that the VE "testified that the residual functional capacity assessed herein precludes [plaintiff] from being able to perform her past relevant work." [AR 20]. In his analysis of plaintiff's ability to perform alternative work, however, the ALJ stated that he asked the VE if any occupations exist which could be performed by a person with plaintiff's vocational profile and the same "residual functional capacity as [plaintiff], *and which require skills acquired in the claimant's past relevant work but no additional skills.*" [AR 20 (italics added)]. The ALJ stated that the VE testified that such a person could perform the three semi-skilled jobs the VE identified during her testimony.

3

[AR 21]. Based on that testimony, the ALJ found that plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." [AR 21].

The VE's testimony is flawed, and the ALJ erred in attempting to rely on that testimony to support his finding that plaintiff can perform alternative work. For purposes of inquiring into plaintiff's ability to perform her past relevant work, the ALJ assumed that plaintiff was limited to simple, repetitive tasks, and he asked the VE to make the same assumption. [AR 15, 19-20, 271]. The VE testified that a person limited to simple, repetitive tasks could not perform any of plaintiff's past, skilled jobs, and the ALJ adopted that finding in his decision. [AR 20, 271-272]. The VE also testified that a person limited to simple, repetitive tasks as described by the ALJ would be limited to unskilled work. [AR 272]. Since a person who is limited to unskilled work by definition cannot perform skilled work (such as plaintiff's past relevant work), the VE's testimony up to this point is internally consistent and consistent with the Commissioner's regulations and policy statements, which define unskilled work as

> work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

See 20 C.F.R. § 404.1468(a).

The term "specific vocational preparation" ("SVP") in section 404.1468(a) is a term of art used in the Dictionary of Occupational Titles ("DOT")to classify "how long it generally takes to learn the job." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). Unskilled jobs are those that can usually be learned in 30 days or less, corresponding to an SVP level of 1 ("[s]hort demonstration only") or 2 ("[a]nything beyond short demonstration up to and including 1 month"). DOT, Appendix C, Components of the Definition Trailer (4th ed. rev.1991); see Terry, 903 F.2d at 1276 (holding that unskilled jobs are those that have an SVP of 30 days or less); SSR 83-10, WL 31251, at *7 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

4

By definition, unskilled work is not only work that can be learned in 30 days or less; it also is work that does not require or utilize any skills. The Commissioner's regulations allow for the possibility that a person who cannot perform his or her past relevant work nonetheless may have acquired work skills that can be transferred to other jobs. See 20 C.F.R. § 404.1458(d). The Commissioner may find that acquired skills are transferable "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). However, "[a]cquired skills do not transfer to unskilled work; they transfer only to other work that requires the same or similar skills." Terry, 903 F.2d at 1277. Therefore, a disability claimant who is limited to unskilled work has no acquired work skills, or else that person has acquired work skills but they are not transferable to other skilled or semi-skilled positions, leaving that person no better off than someone who never acquired any skills.

Here, the VE testified that the hypothetical person's limitation to "simple, repetitive tasks would limit that person to unskilled work." [AR 272]. By definition, then, the hypothetical person had no transferable skills. The ALJ asked the VE to identify three such jobs the hypothetical person could perform with a limitation to simple, repetitive tasks. The VE ran into trouble when she did not limit her response to unskilled jobs. Instead, she interjected an assumption of her own: that the hypothetical person could "us[e] transferable skills," enabling her to perform the *semi-skilled* job of general clerk, front desk clerk, and child-care provider.[AR 272]. There was no evidentiary basis for that assumption in the ALJ's hypothetical question, which the VE correctly interpreted as involving unskilled (as well as simple and repetitive) work. Moreover, the VE never opined that plaintiff (or the hypothetical person) in fact acquired any transferable skills from her past relevant work, nor did the VE suggest what the "transferable skills" she alluded to might be. Absent such testimony by the VE, or other substantial evidence showing that plaintiff had transferable skills, there is no foundation for the VE's opinion that the hypothetical person matching plaintiff's profile could perform the three semi-skilled jobs the VE identified. Accordingly, the VE's testimony does not constitute substantial evidence supporting the ALJ's finding that plaintiff can perform those semi-skilled jobs.

In his decision,, the ALJ asserted that he asked the VE to consider alternative jobs which could be performed by an individual with the same RFC as plaintiff "and which require skills acquired in [plaintiff's]

past relevant work," but that assertion is inaccurate. [AR 20]. The ALJ did not ask the VE about transferable skills or mention them in his hypothetical question. Instead, the ALJ asked the VE to assume a limitation to simple, repetitive tasks. [AR 271-272]. The VE correctly interpreted that limitation as calling for no more than unskilled jobs, which by definition cannot involve the use of acquired skills.

Although it is unnecessary to consider the specific skill sets involved in the semi-skilled jobs the VE identified, it is worth noting that the DOT assigns the jobs of administrative clerk (DOT job number 219.362-010), hotel clerk (DOT job number 238.367-038), and nursery school attendant (DOT job numer 359.677-018) an SVP of 4, denoting "over 3 months up to and including 6 months" of specific vocational preparation time.[1] [See JS, Exs. A-C]. Other components of the DOT job definitions also suggest that they are not simple, repetitive jobs. For example, all three of those jobs require a "temperament" for "performing a variety of duties." In addition, the job of administrative clerk requires "Reasoning Development" at level 4 on a scale of 1 (lowest complexity) to 6 (highest complexity), while the other two jobs require "Reasoning Development" at level 3.[2] [JS, Exs. A-C]. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work" was more consistent with level 2 Reasoning Development than with level 3).

For these reasons, the Commissioner did not meet her burden at step five to establish the existence of alternative jobs within plaintiff's RFC that are available in significant numbers in the national economy.

---

[1] The DOT job titles cited by plaintiff do not exactly match those given by the VE or the ALJ, but defendant does not dispute that those DOT jobs correspond to the semi-skilled jobs identified by the VE. Moreover, the VE created any ambiguity by not citing the applicable DOT job classification numbers in her testimony.

[2] The DOT job classifications include a "General Educational Development" component, which is comprised of three scales: Reasoning Development, Math Development, and Language Development. Each of those scales ranges from Level 1 (low) to Level 6 (high). Level 3 on the Reasoning Development scale is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Level 4 is defined as the ability to "apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." DOT, Appendix C, Components of the Definition Trailer(4th ed. rev.1991).

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

A remand for further administrative proceedings and a new decision is the appropriate remedy because it is not clear from the record that the ALJ would be required to find plaintiff disabled if the vocational expert had confined her testimony to the assumptions in the ALJ's hypothetical question.

///
///
///

Plaintiff also contends that the ALJ erred in evaluating the opinion of her treating physician, Dr.

1  Multani, regarding her mental functional limitations. On remand, plaintiff shall have the opportunity to
2  submit new evidence, including any treatment reports, clinical findings, or other objective evidence that may
3  be available to support Dr. Multani's opinion.

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: December 5, 2006

/ S /
_____
ANDREW J. WISTRICH
United States Magistrate Judge